[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

LM

Audrey L. Kimner
)
)

Plaintiff

**United States District Court**
**Northern District of Illinois**

v.

1:22-cv-04046
Judge Jorge L. Alonso
Magistrate Judge Heather K. McShain
RANDOM

**RECEIVED**

AUG 03 2022

Aon Hewitt
Defendant

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**COMPLAINT**

Plaintiff was an assault victim and financially abused by ex-husband and his counsel for years. Plaintiff contacted this corporation and Duke to place funds into separate accounts under plaintiffs name, along with other assets that were stolen. Plaintiff called Duke Energy and Hewitt for eight years, and sent a court order and QDRO prepared and served in 2017. This QDRO was "pre-approved" in 2017 and the company was rude, tried to obstruct the plaintiff, refused to release names from their legal department for remedy per fundimental rights to the plaintiff. After years of stress and intentional obstruction, the employee admitted that the money was withdrawn years ago, refused names, account numbers, remedy and blocked the plaintiff via email per two supervisors. The stress has been enormous, and would have changed the plaintiffs life, and placed the plaintiff in further harm financially and safety dice to insurance that is attached. The company employee stated to subpena wire and contacts of this wife fraud across state lines. The plaintiff had no remedy, and is forced to take legal action.

The ex husband lived a double life and retired from Duke after twelve years, so all funds are marital, but

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(See pg 2)

①

August 01, 2022

)
)
)
**United States District Court**
**Northern District of Illinois**

)
)
Audrey L. Kimner
Plaintiff
v.

)
)
)

Note: Plaintiff has ADA
Rights under II + III.

Ava Hewitt
Defendant

)
)

Pg 2
( Continued )

**COMPLAINT**

used four lawyers from South Carolina to financial abuse the plaintiff under the color of law after divorce, and after the plaintiff left the state for fear of her life. The four lawyers stole plaintiffs assets on January 26, 2015 and Lori W. Stoney Gerry Thais, Suzanne Groff, Margaret Theos with Judge Sprotte took full advantage when the plaintiff was prevented from a court hearing due to a passinger having a heart attack on plaintiffs flight. Now extrinsic fraud has been ongoing for years to return all, and many federal crimes took place. under financial abuse laws all must be returned. The South Carolina judges refuse all court motions and deny proof or counsel from the plaintiff in open court due to fraud and racKoteing by these bar members who have been sued and found guilty by their own county. The plaintiff request QPRO, retirement and 401K to be returned, along with punitive damages in the amount of $ 750,000. from Ava Hewitt for refusing remedy for years to date. The plaintiff will mediate to move forward immediately without (fatigue and mental distress) delay. All is outragous wire fraud and intentional. Respectfully, Audrey L. Kimner, Plaintiff, pro se (proof attached)
P.O. Box 1493
Carmel, CA 93921, 843-754-1543

August 01, 2022



Date: 05/08/2017

Order Number: A691EJD4G1
Participant: Michael J. Kimmer
Alternate Payee: Audrey L. Kimmer

Ms. Jennie Howe
QDRO Services, LLC
Post Office Box 1569
Spring, TX 77283-1569

# Domestic Relations Order Preapproval Notice

The Qualified Order Center has received a domestic relations order for the participant named above.

The enclosed domestic relations order has been preapproved by the Qualified Order Center. This means the order will satisfy the requirements of a Qualified Domestic Relations Order (QDRO) based on the employer's QDRO requirements **once the court signs and certifies the order**.

If you change your order once it's been preapproved, this may cause it to be **denied**.

## Next Step

Send the original court-certified domestic relations order to:

Duke Energy Corporation Qualified Order Center
P.O. Box 1433
Lincolnshire, IL 60069-1433

You'll receive a written response with a determination 30 days after the court-certified order has been received.

## For More Information

If you need more information, send an e-mail message to QOCenter@aonhewitt.com, and we'll respond to you within two business days. Include the following information:

- Your name
- Employer's name
- Employee's name
- Plan name

0003159881 16518-A000028

1 of 2

Qualified Order Center
P.O. Box 1495
Lincolnshire, IL 60069-1495


Private and Confidential

A000028

Ms. Audrey L. Kimmer
Number 301
1616 Fountainview
Houston, TX 77057

<u>Recipient:</u>
Alternate Payee



2 of 2

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE FAMILY COURT OF THE** |
| | ) | **NINTH JUDICIAL CIRCUIT** |
| **COUNTY OF BERKELEY** | ) | |
| | ) | **CASE NO.: 2010-DR-08-2517** |
| **AUDREY L. KIMNER,** | ) | |
| | ) | |
| Plaintiff, | ) | **QUALIFIED DOMESTIC** |
| | ) | **RELATIONS ORDER** |
| v. | ) | **(Duke Energy Retirement** |
| | ) | **Cash Balance Plan)** |
| **MICHAEL J. KIMNER,** | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

*Qualified Domestic Relations Order (Defined Benefit Plan)*
This Order creates or recognized the existence of an alternate payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined benefit plan, which is qualified under Section 401 of the Internal Revenue Code (the "Code"). This Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") under Section 414(p) of the Code and Section 206(d) of the Employee Retirement Income Security Act of 1974 ("ERISA") and shall be interpreted and administered in conformity with such laws.

This Order is entered pursuant to the authority granted under applicable domestic relations laws of the State of Texas.

**1. Plan**
This Order applied to the **Duke Energy Retirement Cash Balance Plan**, referred to as ("the Plan").

Any successor to this Plan shall also be subject to the terms of the Order.

**2. Participant**
The name, address, Social Security number, and the date of birth of the Participant are as follows:

| | |
|---|---|
| Name: | **Michael John Kimner** |
| Address: | **639 Island Park Drive, Charleston, SC 29492** |
| Social Security Number: | Provided under separate cover |
| Date of Birth: | Provided under separate cover |

**3. Alternate Payee**
The person named as alternate payee meets the requirements of the definition of alternate payee as set forth in Section 5 of this Order. The Alternate Payee's name, address, Social Security number, date of birth and relationship to the Participant are as follows:

| | |
|---|---|
| Name: | **Audrey L. Kimner** |
| Address: | **1616 Fountainview, No. 310, Houston, Texas 77057** |

1

| | |
|---|---|
| Social Security Number: | Provided under separate cover |
| Date of Birth: | Provided under separate cover |
| Relationship: | Former Spouse |

The Alternate Payee shall be responsible for notifying the Plan Administrator in writing of any changes in her mailing address subsequent to the entry of this Order.

## 4. Marital History

Date of Marriage:     **April 5, 1997**

Date of Divorce:     **January 12, 2012**

## 5. Definitions

**Accrued Benefit** – The participant's accrued benefit is the participant's benefit as if he or she terminated employment on the date of determination and began receiving a distribution from the Plan. For benefits accrued after the cash balance conversion date, the vested accrued benefit is the participant's cash balance benefit.

**Alternate Payee** – The alternate payee is any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all or a portion of the benefits payable under the Plan with respect to the participant.

**Date of Determination** – The date of determination is the date as of which to calculate the participant's accrued benefit from the Plan in order to determine the Alternate Payee's designated portion in accordance with the terms of this Order.

**Plan Administrator** – Duke Energy Corporation ("Duke Energy") is the Plan Administrator for Duke Energy's employee benefit plans. Duke Energy has contracted with Hewitt Associates LLC to establish procedures and administer QDROs.

**Vested** – A participant is vested if he or she has a nonforfeitable right to a benefit under the Plan.

## 6. Benefits Payable To The Alternate Payee

This Order assigns to the Alternate Payee an amount equal to **THIRTY SEVEN AND 50/100 PERCENT (37.50%)** of the Participant's vested accrued benefit under the Plan (identified in Section 1) as of **January 12, 2012 ("Valuation Date").**

The amount shall be separately accounted for under the Plan for the exclusive benefit of the Alternate Payee, and adjusted to reflect applicable interest credits from the date a separate benefit is established through the date of distribution to the Alternate Payee. This portion of the vested accrued benefit shall be and is irrevocably assigned to the Alternate Payee.

Any actuarial adjustment that might be necessary to base the Alternate Payee's unconverted annuity benefit on the Alternate Payee's lifetime will be applied to the Alternate Payee's benefit. Further, early commencement reductions shall be made as necessary to reflect commencement of

Case No. 2010-RD-08-2517; Kimner v. Kimner
QDRO – Duke Energy Retirement Cash Balance Plan

the Alternate Payee's benefit prior to the Participant's normal retirement age or prior to the commencement of benefit payments to the Participant. If such reductions are required, they shall be determined on the basis of the Plan's actuarial assumptions and not on the basis of any subsidized early retirement factors contained in the Plan.

The Alternate Payee shall have no rights to any increase in the Participant's benefit under the Plan caused by service, earnings, separation programs, or Plan amendments occurring subsequent to the **Valuation Date**, or to the portion of the Participant's accrued benefit under the Plan not assigned in this Order.

### 7. Form of Payment

Except as otherwise noted, the vested accrued benefit assigned by this Order shall be paid to the Alternate Payee in any form available in accordance with the provisions of the Plan at commencement. However, the Alternate Payee's benefits may not be paid as a joint and survivor annuity naming the Alternate Payee's subsequent spouse as the survivor.

### 8. Commencement

The Alternate Payee shall be eligible to receive payment as soon as administratively reasonable following the determination that this Order is a Qualified Domestic Relations Order. In no event can the Alternate Payee begin her benefit later than April 1 of the calendar year in which the Participant attains age 70-1/2.

### 9. Death Procedures

If the Alternate Payee dies before the amount assigned in accordance with this Order is distributed to the Alternate Payee, such amount shall be paid in a lump-sum distribution to the designated beneficiary as soon as administratively practicable after the date of death. If no valid designation exists at the date of death for the Alternate Payee, the balance shall be distributed as provided by the Plan. No adjustment to the Participant's benefit under the Plan shall be made on account of the death of the Alternate Payee.

The death of the Participant shall have no effect on the amount assigned to the Alternate Payee in accordance with this Order. The Alternate Payee shall not be entitled to any portion of a death benefit payable on account of the death of the Participant unless the Participant has designated the Alternate Payee as a beneficiary with respect to the Participant's remaining vested accrued benefit.

### 10. Retention of Jurisdiction

This matter arises from an action for divorce or legal separation in this Court under the case number set forth at the beginning of this Order. Accordingly, this court has jurisdiction to issue this Order.

In the event the Plan Administrator determines that this Order is not a Qualified Domestic Relations Order, both parties shall cooperate with the Plan Administrator in making any changes needed for it to become qualified. This includes signing all necessary documents. For this purpose, this court expressly reserves jurisdiction over the dissolution proceeding involving the Participant, the Alternate Payee, and the Participant's interest in the Plan.

Case No. 2010-RD-08-2517; Kimner v. Kimner
QDRO – Duke Energy Retirement Cash Balance Plan

## 11. Limitations

Pursuant to Section 414(p)(3) of the code and except as provided by Section 414(p)(4), this Order:

(i)   Does not require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan;

(ii)  Does not require the Plan to provide increased benefits; and

(iii) Does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a Qualified Domestic Relations Order.

## 12. Taxation

For purposes of Section 402 and 72 of the Code, any alternate payee who is the spouse or former spouse of the participant shall be treated as the distributee of any distribution or payments made to the Alternate Payee under the terms of the Order and, as such, will be required to pay the appropriate federal, state and local income taxes on such distributions.

## 13. Constructive Receipt

If the Plan inadvertently pays to the Participant any benefit that is assigned to Alternate Payee pursuant to the terms of this Order, the Participant will immediately reimburse the Plan to the extent that the Participant has received such benefit payments and shall forthwith pay such amounts so received to the Plan within ten (10) days of receipt.

If the Plan inadvertently pays to the Alternate Payee any benefit that is assigned to Participant pursuant to the terms of this Order, the Alternate Payee will immediately reimburse the Plan to the extent that the Alternate Payee has received such benefit payments and shall forthwith pay such amounts so received to the Plan within ten (10) days of receipt.

## 14. Effects Of Plan Termination

If the Plan is terminated, whether on a voluntary or involuntary basis, and the Participant's benefits become guaranteed by the Pension Benefits Guarantee Corporation ("PBGC"), the Alternate Payee's benefits, as stipulated herein, will also be guaranteed to the same extent in accordance with the Plan's termination rules and the same ratio as the Participant' benefits are guaranteed by the PBGC.

## 15. Certification Of Necessary Information

All payments made pursuant to this order shall be conditioned on the certification by the Alternate Payee and the Participant to the Plan Administrator of such information as the Plan Administrator may reasonably require from such parties to make the necessary calculation of the benefit amounts contained herein.

## 15. Plan Administrator

The Alternate Payees shall keep the Plan Administrator informed of Alternate Payee's current addresses and telephone numbers. Notice of change of address and telephone number shall be made in writing to the Plan Administrator addressed as follows:

Case No. 2010-RD-08-2517; Kimner v. Kimner
QDRO – Duke Energy Retirement Cash Balance Plan

Duke Energy Qualified Order Team
P.O. Box 1433
Lincolnshire, IL 60069-1433

AND IT IS ORDERED:

_____
Wayne M. Creech
Family Court Judge
Ninth Judicial Circuit

Moncks Corner, South Carolina
_____, 2017

**APPROVED AND CONSENTED TO
AS TO BOTH FORM AND SUBSTANCE:**

_____
Participant, Michael John Kimner

_____
Alternate Payee, Audrey L. Kimner

Case No. 2010-RD-08-2517; Kimner v. Kimner
QDRO – Duke Energy Retirement Cash Balance Plan

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** ) | **IN THE FAMILY COURT OF THE** |
| ) | **NINTH JUDICIAL CIRCUIT** |
| **COUNTY OF BERKELEY** ) | |
| ) | **CASE NO.: 2010-DR-08-2517** |
| **AUDREY L. KIMNER,** ) | |
| ) | |
| **Plaintiff,** ) | **QUALIFIED DOMESTIC** |
| ) | **RELATIONS ORDER** |
| **v.** ) | **(Duke Energy Retirement** |
| ) | **Savings Plan)** |
| **MICHAEL J. KIMNER,** ) | |
| ) | |
| **Defendant,** ) | |
| _____ ) | |

***Qualified Domestic Relations Order (Defined Contribution Plan)***
This Order creates and recognizes the existence of an alternate payee's right to receive a portion of the participant's benefit payable under an employer-sponsored defined contribution plan, which is qualified under Section 401 of the Internal Revenue Code (the "Code"). This Order is intended to constitute a Qualified Domestic Relations Order ("QDRO") under Section 414(p) of the Code and Section 206(d) of the Employee Retirement Income Security Act of 1974 ("ERISA") and shall be interpreted and administered in conformity with such laws.

This Order is entered pursuant to the authority granted under the applicable domestic relations laws of the State of South Carolina.

**1. Plan**
This Order applies to the **Duke Energy Retirement Savings Plan.**

Any successor to this Plan shall also be subject to the terms of the Order.

**2. Participant**
The name, address, Social Security number, and the date of birth of the Participant are as follows:

| | |
|---|---|
| Name: | **Michael John Kimner** |
| Address: | **639 Island Park Drive, Charleston, SC 29492** |
| Social Security Number: | Provided under separate cover |
| Date of Birth: | Provided under separate cover |

**3. Alternate Payee**
The person named as alternate payee meets the requirements of the definition of alternate payee as set forth in Section 4 of this Order. The Alternate Payee's name, address, Social Security number, date of birth, and relationship to the Participant are as follows:



| | |
|---|---|
| Name: | **Audrey L. Kimner** |
| Address: | **1616 Fountainview, No. 301, Houston, Texas 77057** |
| Social Security Number: | Provided under separate cover |
| Date of Birth: | Provided under separate cover |
| Relationship to Participant: | Former Spouse |

The Alternate Payee shall be responsible for notifying the Plan Administrator in writing of any changes in her mailing address subsequent to the submission of this Order.

## 4. Definitions

**Alternate Payee** – The alternate payee is any spouse, former spouse, child, or other dependent of the participant who is recognized by a domestic relations order as have a right to receive all or a portion of the benefits payable under the Plan with respect to the participant.

**Liquidation Date** – The liquidation date is the date the amount assigned to the alternate payee is transferred from the participant's Vested Account Balance to a separate account established for the alternate payee in accordance with the terms of the QDRO. An assignment as of the liquidation date assigns a portion of the participant's current Vested Account Balance.

**Plan Administrator** – Duke Energy Corporation ("Duke Energy") is the Plan Administrator for Duke Energy's employee benefits plans. Duke Energy has contracted with Hewitt Associates LLC to establish procedures and administer QDROs.

**Valuation Date** – The Valuation Date is the date on which the participant's Vested Account Balance will be valued in order to determine the alternate payee's designated portion in accordance with the terms of this Order. Accounts are valued on a daily basis.

**Vested Account Balance** – The participant's Vested Account Balance is the dollar amount the participant has a nonforfeitable right to receive from the Plan.

## 5. Benefits Payable to the Alternate Payee

The Order assigns to the Alternate Payee an amount equal to a **THIRTY SEVEN AND 50/100 PERCENT (37.50%)** of the Participant's Vested Account Balance under the Plan (identified in Section 1) as of **January 12, 2012 ("Valuation Date").**

From the **Valuation Date** to the liquidation date, the amount assigned to the Alternate Payee *will* include earnings and losses.

The Participant's Vested Account Balance *will* be reduced by the value of outstanding loans before the Alternate Payee's portion of the benefit is determined.

## 6. Form of Payment

The Alternate Payee shall receive the portion of the Plan benefits assigned to the Alternate Payee in a single lump-sum payment. Such amounts shall be adjusted for earnings and losses from the liquidation date to the date of distribution to the Alternate Payee.

## 7. Commencement

The Alternate Payee shall be eligible to receive payment as soon as administratively reasonable following the determination that his Order is a Qualified Domestic Relations Order. In no event can the Alternate Payee begin her benefit later than April 1 following the year in which the Participant attains age 70-1/2.

## 8. Death Procedures

If the Participant predeceases the Alternate Payee prior to payment of the Alternate Payee's assigned benefits under the QDRO, the Alternate Payee's benefits will not be affected. In the event of the Participant's death, the account balance, which remains the property of the Participant, will be payable to the Participant's designated beneficiary or in accordance with Plan provisions. This Order does not require the Participant to name the Alternate Payee as the beneficiary for the benefits not assigned to the Alternate Payee.

In case of the death of the Alternate Payee prior to distribution of the Alternate Payee's benefits under the QDRO, the assigned benefits will be paid to the Alternate Payee's designated beneficiary or, if none, in accordance with Plan provisions.

## 9. Retention of Jurisdiction

This matter arises from an action for divorce or legal separation in this Court under the case number set forth at the beginning of this Order. Accordingly, this Court has jurisdiction to issue this Order.

In the event the Plan Administrator determines that this Order is not a Qualified Domestic Relations Order, both parties shall cooperate with the Plan Administrator in making any changes needed for it to become qualified. This includes signing all necessary documents. For this purpose, this Court expressly reserves jurisdiction over the dissolution proceeding involving the Participant, the Alternate payee, and the Participant's interest in the Plan.

## 10. Limitations

Pursuant to Section 414(p)(3) of the Code and except as provided by Section 414(p)(4), this Order:

    (i)    Does not require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan;

    (ii)   Does not require the Plan to provide increased benefits; and

    (iii)  Does not require the payment of benefits to an alternate payee that is required to be paid to another alternate payee under another order previously determined to be a Qualified Domestic Relations Order.

## 11. Taxation

For purposes of Section 402 and 72 of the Code, any alternate payee who is the spouse or former spouse of the Participant shall be treated as the distributee of any distribution or payments made to the Alternate Payee under the terms of the Order and, as such, will be required to pay the appropriate federal, state, and local income taxes on such distribution.

## 12. Constructive Receipt

If the Plan inadvertently pays to the Participant any benefit that is assigned to the Alternate Payee pursuant to the terms of this Order, the Participant will immediately reimburse the Plan to the extent the Participant has received such benefit payments and forthwith pay such amounts so received to the Plan within ten (10) days of receipt.

If the Plan inadvertently pays to the Alternate payee any benefit that is actually payable to the Participant, the Alternate Payee must make immediate reimbursement. The Alternate Payee must reimburse the Plan to the extent she received such benefit payments and shall forthwith pay such amount so received to the Plan within ten (10) days of receipt.

## 13. Effects of Plan Termination

If the Plan is terminated, the Alternate Payee shall be entitled to receive her portion of the Participant's benefits as stipulated herein in accordance with the Plan's termination provisions for Participants and beneficiaries.

## 14. Certification of Necessary Information

All payments made pursuant to this order shall be conditioned on the certification by the Alternate Payee and the Participant to the Plan Administrator of such information as the Plan Administrator may reasonably require from such parties to make the necessary calculation of the benefit amounts contained herein.

## 15. Plan Administrator

The Alternate Payees shall keep the Plan Administrator informed of Alternate Payee's current addresses and telephone numbers. Notice of change of address and telephone number shall be made in writing to the Plan Administrator addressed as follows:

    Duke Energy Qualified Order Team
    P.O. Box 1433
    Lincolnshire, IL 60069-1433


AND IT IS ORDERED:

_____
Wayne M. Creech
Family Court Judge
Ninth Judicial Circuit


Moncks Corner, South Carolina
_____, 2017


4

Case No. 2010-DR-08-2517; Kimner v. Kimner
QDRO – Duke Energy Retirement Savings Plan

**APPROVED AND CONSENTED TO
AS TO BOTH FORM AND SUBSTANCE:**

_____
Participant, Michael John Kimner

_____
Alternate Payee, Audrey L. Kimner

5

5 of 5

STATE OF SOUTH CAROLINA    )    IN THE FAMILY COURT OF THE
                )    NINTH JUDICIAL CIRCUIT

COUNTY OF BERKELEY    )

              2011 DEC −6 AM 9: 48 CASE NO.: 2010-DR-08-2517

AUDREY L. KIMNER,    AS    )

              MARY E BROWN    )

    Plaintiff,    CLERK OF COURT    **FINAL ORDER APPROVING**
              BERKELEY COUNTY. S.C    **SETTLEMENT AGREEMENT**

v.    )

                )

MICHAEL J. KIMNER,    )

                )

    Defendant.    )

                )

| | |
|---|---|
| DATE OF HEARING: | December 6, 2011 |
| TRIAL JUDGE: | Wayne M. Creech |
| PLAINTIFF'S ATTORNEYS: | Alexandra D. Varner |
| | Robert N. Rosen |
| | Earle S. Lilly |
| DEFENDANT'S ATTORNEYS: | Lori D. Stoney |
| | Paul E. Tinkler |
| COURT REPORTER: | Leah G. Dupree |

This case began with the filing of a Summons and Complaint on December 9, 2010. Defendant filed an Answer and Counterclaim on January 11, 2011. An Interim Consent Order was entered into on December 16, 2010. An Order appointing a Guardian *ad Litem*, Jon Mersereau, was issued on July 13, 2011.

Present and appearing at the hearing were Plaintiff, her attorneys, Earle S. Lilly and Alexandra D. Varner, as well as Defendant and his attorneys, Lori D. Stoney.

At the hearing in this matter, the parties informed the Court that they had reached an agreement as to some of the issues in their case and had agreed to arbitrate the remaining issues. The parties asked that this Court adopt their written settlement agreement as a final resolution of those issues between them.

The parties presented the signed Child Custody, Support and Property Settlement Agreement

EXHIBIT
5

FILED

STATE OF SOUTH CAROLINA  2012 AUG -7 AM 11: 32  IN THE FAMILY COURT

COUNTY OF BERKELEY       MARY P BROWN          NINTH JUDICIAL CIRCUIT
                         CLERK OF COURT
AUDREY E. KIMNER,        BERKELEY COUNTY, S.C.

               Plaintiff,       )         **CONSENT ORDER**

                          )     (Confirming Arbitration Award
        -vs-            )     and Entering Judgment

MICHAEL J. KIMNER,      )     and Setting out Additional
                          )     Agreements of Parties)
           Defendant.    )

                          )     CASE NO.: 2010-DR-08-2517

      This matter was scheduled to come before the Court on August 7, 2012, pursuant to

Defendant's Motion filed July 25, 2012 (To Confirm and Enforce Arbitration Award, to Enforce

Consent Order and Agreement to Arbitrate, for Attorney's Fees and Costs, and for Other Related

Relief) and pursuant to Plaintiff's July 25, 2012 Motion to Declare Judgment Void.

      Counsel for the parties have represented to the Court that they have resolved the issues

raised in these Motions by agreement, and ask that the Court approve their Agreement, as set out

herein, making it the Order of the Court.

      On December 5, 2011, the parties entered into a Consent Order and Agreement to

Arbitrate, to arbitrate various issues with regard to this Family Court matter.   Pursuant to this

Consent Order and Agreement to Arbitrate, arbitration was conducted on December 5, 2011, and

testimony and evidence was presented.   Thereafter, on July 11, 2012, the arbitrator entered his

Arbitration Award, which has been filed with this Court, and which is incorporated herein as

**Exhibit A**.

VJS
#1

8-7-12
DATE
AS

CERTIFIED TRUE COPIES OF RECORD IN THIS COUNTY

Mary P Brown

CLERK OF COURT, FAMILY COURT
BERKELEY COUNTY, SOUTH CAROLINA

1 of 2

August ___ 2012
Moncks Corner, South Carolina


WE CONSENT:


_Audrey Kimner_ (signature)

Audrey Kimner, Plaintiff
(Pro Se at the time of execution of this
 Consent Order, but with counsel from her
 Texas attorney, Earle S. Lilly)


_Michael Kimner_ (signature)

Michael Kimner, Defendant


_____
Counsel for Plaintiff

_____
Counsel for Defendant      4-6-2012


VJS#4

4

RECEIVED

2020 MAR -5 PM 12: 54

RECEIVED

STATE ETHICS
COMMISSION

**PROVISIONS OF THIS AGREEMENT ARE SUBJECT TO ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT S.C. CODE OF LAWS 15-48-10 et Seq.**

COMMISSION

2011 DEC -6 AM 9: 41

MARY
CLERK OF COURT
BERKELEY COUNTY S.C

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) **CHILD CUSTODY, SUPPORT AND** |
| **COUNTY OF BERKELEY** | ) **PROPERTY SETTLEMENT AGREEMENT** |

This Child Custody, Support and Property Settlement Agreement (hereinafter "Agreement") is made and entered into this _____5th_____ day of December 2011, in Charleston, South Carolina, by and between Audrey L. Kimner (hereinafter referred to as "Wife" or "Mother") and Michael J. Kimner (hereinafter referred to as "Husband" or "Father").

The parties stipulate and agree that once executed by the parties and their attorneys, this mediated settlement agreement is **IRREVOCABLE.**

## **WITNESSETH:**

**WHEREAS**, the parties hereto are husband and wife, having been lawfully married on April 5, 1997 in Houston, Texas; and

**WHEREAS,** the parties are both citizens and residents of Berkeley County, South Carolina; and

**WHEREAS,** two (2) children were born of the marriage, namely, Cameron Hunter Kimner, born on November 17, 1999, now age 12 and Jordan Elizabeth Kimner, born on December 26, 2000, now age 10; and

**WHEREAS,** the Wife is 46 years of age and Husband is 45 years of age; both Wife and Husband are in reasonably good health; and

**WHEREAS,** the Husband and Wife are presently residing separately, having last resided together as Husband and Wife on Daniel Island, in Berkeley County, South Carolina; and

MJK

ALK

_____
Family Court Judge

AUDREY L. KIMNER VS. MICHAEL J. KIMNER

09-DR-08-2517

THE PARTIES AGREE IN PRINCIPLE THAT THIS CASE HAS SUCCESSFULLY MEDIATED, AND THAT THERE ARE NO LEGAL ISSUES LEFT TO BE LITIGATED. ANY LEGAL ISSUES THAT REMAIN UNRESOLVED, SHALL BE DECIDED BY J. TODD MANLEY WITH FINALITY IN BINDING ARBITRATION. BINDING ARBITRATION SHALL TAKE PLACE ON OR BEFORE NOVEMBER 30, 2011.

_Audrey L Kimner_
AUDREY L. KIMNER

_atty for Audrey_          SEPTEMBER 15, 2011

_Michael J_
MICHAEL J. KIMNER

_atty for Micha_

PAGE 1
of 1

J Kimner, 48

DARIEN, CT, 06820

se: Criminal Database

ord Details: Download Report

---

J Kimner, 48

BEL AIR, MD, 21015

se: Harford County Criminal Database

ord Details: Download Report

---

John Kimner, 48

CHARLESTON, SC, 29492

se: South Carolina Bankruptcy Court - Charleston

ord Details: Download Report

---

John Kimner, 48

HOUSTON, TX, 77042

se: Texas Southern District Court - Houston

ord Details: Download Report

---

Michael Kimner, 48

Address: HOUSTON, TX, 77024

Data Source: Texas Southern District Court - Houston

Arrest Record Details: Download Report

---

Michael John Kimner, 48

Address: HOUSTON, TX, 77027

Data Source: Texas Southern District Court - Houston

Arrest Record Details: Download Report

---

Michael John Kimner, 48

Address: CHARLOTTESVILLE, VA, 22901

Data Source: Virginia Western District Court - Charlottesville

Arrest Record Details: Download Report

---

Michael John Kimner, 48

Address: HOUSTON, TX, 77034

Data Source: Texas Southern District Court - Houston

Arrest Record Details: Download Report

1 of 1

11/08/2010  03:12    8437695336                          DR BENNETT                              PAGE  01



# MEDICAL-LEGAL SERVICES
### INDEPENDENT LABORATORY SERVICE
### *DNA TESTING, DRUG TESTING, AND FORENSIC ANALYSIS*
P.O. Box 32391, Charleston, SC 29417  Ph (843) 571-7488  Fax (843) 769-5336

November 5, 2010

Lori Stoney, Esq.
154 King St.
Charleston, SC

RE: Heavy Alcohol Use Test for Mr. Michael Kimner

Dear Ms. Stoney,

Per your request I have provided Forensic Consultation on the above referenced issue.

## Heavy Alcohol Use Test

On October 11, 2010 Mr. Michael Kimner reported to my office for a heavy alcohol use test. This test consists of Carbohydrate Deficient Transferrin (CDT) protein testing coupled with Gamma Glutamyl Transferase (GGT) liver enzyme testing. The results of said test indicate his CDT protein was normal, however his GGT liver enzyme was abnormally elevated (see Report dated 10/14/2010).

## Heavy Alcohol Use Test Description

CDT testing is approved by the Food and Drug Administration (FDA) as a biological marker for recent heavy alcohol consumption. The definition of heavy alcohol consumption for most people is the consumption of multiple drinks on a regular (daily) basis. Heavy alcohol consumption for a period of one week or longer can elevate CDT protein above normal. A POSITIVE test result indicates that the amount of alcohol that person is consuming, is at an unhealthy level for that person. However, the test does NOT determine the condition referred to as "Alcoholism", nor does the test determine whether any specific instances of intoxication occurred. The CDT protein level typically returns to normal after two to four weeks following cessation of alcohol consumption. The CDT test is extremely sensitive to alcohol relapse and is an excellent tool to determine even minor relapses. Even though CDT testing is specific to alcohol, not all persons are responders to the test. This means that some people can be heavy drinkers, but still have their CDT protein stay within normal range. To account for this, and to increase the sensitivity of the alcohol test, testing for GGT is required.

Typically, heavy alcohol consumption of a chronic nature (weeks to months) can also elevate GGT liver enzyme. GGT is a liver enzyme that responds to excessive, chronic metabolic burden placed upon the liver. Elevated GGT can be associated with persons who are alcohol dependent. GGT is routinely used as supportive to the CDT test as it is



**FedEx**

RT **449** 1 16:30
FZ 7350
08.13



Align top of FedEx Express® shipping label here.

ORIGIN ID:MRYA (831) 624-1800
AUDREY KITNER
LINCOLN ST.
PO BOX 28 SE OF OCEAN AVE
CARMEL BY THE SEA, CA 93921
UNITED STATES US

SHIP DATE: 01AUG22
ACTWGT: 1.06 LB
CAD: 114455827/WSXI3600

BILL SENDER

TO ATTN: COURT CLERK
EVERETT DIRKSEN US COURTHOUSE
219 S DEARBORN ST.

CHICAGO IL 60604
(312) 353-0000
REF: AUDREY KITNER
DEPT:



FedEx
Express

E

**ST CHIA**

TRK# 2762 6367 7350
0201

THU – 04 AUG 4:30P
EXPRESS SAVER
60604
IL-US ORD
DSR



